IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHATON FULLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19-cv-01914 ) |
| THOMAS DART, et al., | ) Judge Andrea R. Wood ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shaton Fuller (also known as Corliss Burnside) was incarcerated at Cook County Jail ("Jail") at various times between 1993 and 2019. In March 2019, Fuller filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Defendants Thomas Dart, Bilqis Jacobs-El, and Cook County ("County"), claiming that they permitted unconstitutional conditions of confinement to persist at the Jail and denied her reasonable access to medical care. Now before the Court are Defendants' motions to dismiss Fuller's third amended complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 36, 42.) In the alternative, Defendants also have moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). For the reasons stated below, Defendants' motions are granted in part and denied in part.

BACKGROUND

For purposes of considering Defendants' motions to dismiss, the Court accepts Fuller's factual allegations as true and grants her the benefit of every reasonable inference that may be drawn from them. *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

As alleged in her TAC, Fuller has been incarcerated at the Jail at various times over the past 28 years, including in 1993, from 1996 to 2001, from 2003 to 2009, and from 2009 to 2019. (*See* TAC ¶¶ 1, 12, Dkt. No. 30.) Fuller has sued Dart, in his official capacity as Cook County Sherriff, and Jacobs-El,[1] in her official capacity as Director of the Cook County Department of Facilities Management, based on their alleged deliberate indifference to allegedly unconstitutional living conditions at the Jail. (*Id.* ¶¶ 5–6.)

Specifically, Fuller alleges that Dart and Jacobs-El have allowed her and other inmates at the Jail to be exposed to "unsanitary, toxic, and harmful conditions." (*Id.* ¶ 15.) She claims to have been subjected to "maggots, gnats, and worms present in her living quarters" and that she has had to use Jail facilities where visible mold, bacteria, fungus, mildew, and lead deposits were present on faucets, toilets, and shower heads. (*Id.* ¶ 20.) Fuller further alleges that corrosion of the Jail's water pipes contaminated her drinking water, causing her to experience stomach pains, cramps, irritation, and other adverse health effects. (*Id.* ¶ 21.) She claims to have developed asthma and shortness of breath as a result of her exposure to excessive mold, mildew, and other airborne bacteria (*id.* ¶¶ 22–23), and that the unsanitary conditions have caused her to suffer numerous other health issues, including wheezing, coughing, dizziness, feeling faint, fevers, headaches, rashes, irregular bleeding, and pelvic pain (*id.* ¶ 28). Perhaps most seriously, Fuller claims that her exposure to contaminants has led her to develop uterine fibroid tumors and made her infertile. (*Id.*) These physical health issues have exacerbated Fuller's depression, anxiety, panic attacks, insomnia, irritability, and mood disorders. (*Id.*) Finally, on occasions when Fuller experienced shortness of breath, anxiety, and panic attacks, she claims to have been denied proper medical care. (*Id.* ¶¶ 59–61.)

---

[1] Fuller refers to Jacobs-El using male pronouns. (*See* TAC ¶ 6.) But Jacobs-El's motion uses female pronouns. (*See* Jacobs-El & County's Mot. at 1–3, Dkt. No. 42.) The Court will thus refer to Jacobs-El using female pronouns.

Fuller claims that she attempted to raise her complaints through the Jail's administrative grievance procedure, but her complaints were not resolved. (*Id.* ¶¶ 34–37.) She also spoke to a "Mr. Roland," the head of sanitation for her housing unit (Division 8), about the Jail's inadequate sanitation. (*Id.* ¶ 18.) He informed her that Jail officials are not responsible for maintaining its cleanliness. (*Id.*) Fuller alleges that Dart and Jacobs-El are aware of the unsanitary conditions at the Jail as a result of her and others' complaints, numerous other lawsuits concerning these conditions, and the "open and notorious" conditions of her housing unit. (*Id.* ¶¶ 42–43.)

Fuller's complaint asserts four counts.[2] Count I alleges that Dart and Jacobs-El were deliberately indifferent to Fuller's serious medical needs and the unsanitary conditions at the Jail. Count II alleges that all Defendants failed to offer Fuller and other inmates sanitary living conditions and adequate medical treatment pursuant to one or more County Department of Corrections official policies, practices, or customs. (*Id.* ¶ 54.) Fuller also claims that Defendants' "blatant disregard of the complaints of unsanitary conditions in the jail and request[s] for medical treatment . . . is so persistent that it equates to a custom or practice in the Jail to disregard the safety and well being of the inmates housed in Division 8." (*Id.* ¶ 55.) Count III alleges that Dart and Jacobs-El acted with deliberate indifference by refusing Fuller's requests for reasonable medical care to treat her serious health problems. (*Id.* ¶¶ 57–62.) And Count IV consists of an indemnification claim against the County. (*Id.* ¶¶ 63–64.) Fuller requests both injunctive and compensatory relief.

## DISCUSSION

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[2] Fuller filed her original, first amended, and second amended complaints in this case before the Court recruited counsel on her behalf and before Defendants appeared. The present motions to dismiss are the first Defendants have filed in this case.

3

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "The complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (internal quotation marks and alterations omitted). "The statement of the claim must sufficiently give fair notice of what the claim is and the grounds upon which it rests to the defendants." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal quotation marks and alterations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

  In the alternative, Defendants seek relief under Rule 12(e). A Rule 12(e) motion for a more definite statement "is designed to strike at unintelligibility rather than want of detail." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 911 (N.D. Ill. 2007) (internal quotation marks omitted). A Rule 12(e) motion may be granted where the complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848–49 (7th Cir. 2017).

  As an initial matter, Defendants cite both Rules 12(b)(6) and 12(e) in arguing that the TAC does not provide them fair notice of Fuller's claims because it cites both the Eighth and Fourteenth Amendments to the United States Constitution. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court clarified that Eighth Amendment claims brought by convicted prisoners are different than Fourteenth Amendment claims brought by pretrial detainees. *See id.* at

4

400–01 ("The language of the two Clauses differs, and the nature of the claims often differs."). Prisoners' "rights are rooted in the Eighth Amendment's prohibition on cruel and unusual punishment. Pretrial detainees are in a different position, because their detention is unrelated to punishment." *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019). Pretrial detainees are thus entitled to greater protections. While a convicted prisoner must show that defendants acted with deliberate indifference, a pretrial detainee need only show "something akin to reckless disregard." *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (internal quotation marks omitted).

Fuller does not specify in the TAC whether she was a convicted prisoner or a pretrial detainee at the times relevant to her complaint. But plaintiffs are not required to plead legal theories. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018). As such, Fuller's failure to identify the legal standard that applies to her claims does not entitle Defendants to dismissal. Moreover, it is reasonable to infer based on Fuller's incarceration at the Jail that she was a pretrial detainee during most or all times relevant to her TAC. Because pretrial detainees benefit from a lesser standard of proof and reasonable inferences must be drawn in Fuller's favor at this stage, the Court will assume for present purposes that she was a pretrial detainee during the events giving rise to her claims.

I. Rule 12(b)(6) Motion to Dismiss

Defendants first argue under Rule 12(b)(6) that they are entitled to dismissal of all Fuller's claims because, over the time period described in her complaint, they were complying with a court order to improve Jail conditions. Specifically, in 2010, the United States Department of Justice brought a civil rights suit against the County, Dart, and other County officials to enjoin them from depriving Jail inmates of their constitutional rights. (*See* Compl., *United States v. Cook*

*County*, No. 10-cv-02946, (N.D. Ill. May 13, 2010), Dkt. No. 1.) The defendants in that case entered into a consent decree in 2010, agreeing to make certain substantive changes to Jail policy and procedures. (*See* Agreed Order, *United States v. Cook County*, No. 10-cv-02946, (N.D. Ill. May 26, 2010), Dkt. No. 13.) The district court overseeing the *United States v. Cook County* case released Dart from the consent decree in 2017. (*See* Min. Entry, *United States v. Cook County*, No. 10-cv-02946 (N.D. Ill. June 9, 2017), Dkt. No. 361.) Dart and the County now ask this Court to take judicial notice of their compliance with the consent decree and further find that the Jail has provided Fuller and other inmates with living conditions and care that meet constitutional standards.

At the motion to dismiss stage, the Court may consider "the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson*, 714 F.3d at 436. "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). Judicial notice "substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *Id.* Therefore, the tool should be approached cautiously. *Id.* The contents of court records may be a proper subject of judicial notice, but the "application of a previous finding to a latter proceeding must be beyond reasonable dispute." *Id.* at 1083.

Here, it would be inappropriate to take judicial notice of the consent decree upon which Defendants seek to rely, particularly where it is being invoked to bar Fuller's claims at the

6

pleadings stage. Neither the consent decree nor Dart's dismissal amount to "findings." *See Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at *12 (N.D. Ill. Mar. 18, 2016) (deciding that a court-appointed expert's report in another case regarding the dental care at a specific prison was not a "finding" and not an appropriate subject for judicial notice). This Court has no information concerning the context of Dart's dismissal from *United States v. Cook County*, except that the district court dismissed him on the United States's motion. His dismissal may have been the result of a finding that Dart had fully complied with the terms of the consent decree, as Defendants suggest. But his dismissal may also have been the consequence of a negotiated agreement or any number of other factors unrelated to Dart's compliance with the consent decree. In addition, courts may only take judicial notice of facts not subject to reasonable dispute—for instance, the date that a particular filing was due, *see Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012), or the time of the sunset on a specific night, *see Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015). By contrast, the question of whether the County and Dart have provided inmates with adequate medical care and housing is fact-intensive and disputable. *See Rowe v. Gibson*, 798 F.3d 622, 629 (7th Cir. 2015) (explaining that the accuracy of facts must be indisputable before courts may take judicial notice of them). Finally, it is not clear that the matters at issue in *United States v. Cook County* even relate to this case—Dart was dismissed from that 2010 consent decree in 2017, whereas Fuller's allegations in this case span nearly thirty years, from 1993 through 2019. At this point, the Court will not consider the consent decree Defendants have cited.

Next, Defendants argue that because Fuller has asserted her claims against Dart and Jacobs-El in their official capacities only (*see* TAC ¶¶ 5–6), all of her claims amount to claims against the County. *See Katz-Crank v. Haskett*, 843 F.3d 641, 646–47 (7th Cir. 2016); *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The County, a municipality, is a "person" for

purposes of § 1983 claims. *First Mw. Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021); *Mercado v. Dart*, 604 F.3d 360, 364 (7th Cir. 2010). As such, the County may only be held liable for its own violations of a plaintiff's constitutional or federal rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Section 1983 does not allow for liability against municipalities under a theory of *respondeat superior*. *Nelson v. City of Chicago*, 992 F.3d 599, 606 (7th Cir. 2021). In other words, the County cannot "be liable simply because the alleged wrongdoers were its employees acting within the scope of their employment." *Id.* Instead, the County is only liable if its own actions were the "moving force" for the alleged violation. *Id.* (quoting *LaPorta*, 988 F.3d at 987).

Counts I, II, and III all present official-capacity claims against Dart and Jacobs-El alleging deliberate indifference to inmates' housing and medical needs. As a result, there is likely overlap in these claims. "Courts have authority to dismiss duplicative claims if they allege the same facts and the same injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). "Claims that involve the same operative facts and same injury, and that require proof of essentially the same elements, are duplicative as opposed to alternative." *Id.* The Court will therefore determine whether any of Counts I, II, and III allege the same facts, injury, and require proof of the same elements, such that one or more of those counts should be dismissed.

Count I consists of a § 1983 claim alleging that Dart and Jacobs-El have known about and ignored the hazardous, unconstitutional living conditions at the Jail that caused Fuller's health issues. Count II is also a § 1983 claim alleging that, pursuant to one or more official County policies, Dart and Jacobs-El failed to address such hazardous, unconstitutional living conditions. Finally, Count III asserts that Dart and Jacobs-El were aware of Fuller's medical issues—

shortness of breath, anxiety, and panic attacks—and refused to provide her reasonable medical treatment.

Counts I and II allege the same basic facts: that Defendants allowed unsanitary Jail conditions to persist. They also allege the same injury to Fuller's health and require proof of the same basic elements. As a result, Counts I and II amount to duplicative claims. Their primary distinction is that Count II adds language concerning Defendants' maintaining a policy or practice. But proof of a policy, practice, custom, or final decision by a policymaker will be required under both counts, since both seek to hold Dart and Jacobs-El liable in their official capacities only.[3] *See Monell*, 436 U.S. at 690–91. The Court therefore denies Count I without prejudice as duplicative. Count III is also a § 1983 claim, but it is predicated on slightly different facts—namely, Defendants' denying Fuller access to reasonable medical care to treat health issues she developed as a result of the Jail's unsanitary living conditions. For that reason, Count III will not be dismissed as duplicative. Having dismissed Count I without prejudice as duplicative of Count II, the Court will proceed to evaluate whether Counts II and III state valid claims against Defendants.

Count II alleges that the Defendants have turned a blind eye to the unsanitary and unconstitutional conditions at the Jail as a result of their official policies, practices, or customs. Generally, to state a claim for unconstitutional conditions of confinement, a plaintiff must allege that officials were deliberately indifferent to conditions that resulted "in the denial of the minimal civilized measure of life's necessities." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (internal quotation marks omitted). To state a *Monell* claim against the County based on such

---

[3] Count I and Count II also appear different on their faces because Count I is asserted against "Individual Defendants," *i.e.*, Dart and Jacobs-El, whereas Count II is asserted against all "Defendants," which includes the County. But as explained above, this is a false distinction; the official capacity claims against Dart and Jacobs-El which amount to claims against the County. *See Monell*, 436 U.S. at 690 n.55.

conditions, the plaintiff must "'plead[ ] factual content that allows the court to draw the reasonable inference' that the [County] maintained a policy, custom, or practice" that resulted in the underlying constitutional violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). There are three types of actions that can support liability under a *Monell* theory: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (internal quotation marks omitted). More concisely stated, "[e]ither the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

There are no "bright-line rules defining a widespread custom or practice" or "how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (internal quotation marks and citations omitted). "But the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Id.* Generally, the bare allegation that a defendant has a policy, practice, or custom that violates individuals' constitutional rights is a legal conclusion that may be disregarded at the motion-to-dismiss stage. *See McCauley*, 671 F.3d at 617–18; *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997).

Fuller's TAC alleges that Dart and Jacobs-El, the County Sheriff and Director of Facilities, respectively, have demonstrated a blatant disregard for the unsanitary conditions at the Jail. Specifically, Fuller has been exposed to maggots, gnats, and worms in her living quarters and visible mold, fungus, bacteria, mildew, and lead in the Jail bathrooms. She alleges that even

though Dart and Jacobs-El have been aware of these conditions as a result of numerous inmate lawsuits, grievances, and their supervision of the Jail, they have not taken any appropriate steps to remedy the conditions. Fuller also claims that she told another Jail official about her housing conditions, and that individual advised her that the Jail and County are not responsible for the Jail's sanitation. Fuller claims that the unsanitary environment at the Jail has caused her to develop several serious health conditions, such as asthma, depression, and fibroid tumors causing infertility.

Based on these factual allegations, the Court concludes that Count II states a *Monell* claim against the County. First, Fuller's TAC describes dire living conditions and alleges that they have caused her numerous long-term health problems. Indeed, Defendants have not even argued that the conditions outlined in the complaint, if accurately detailed, are constitutionally acceptable. Next, it is reasonable to infer based on the pleaded facts that policymakers Dart and Jacobs-El have turned a blind eye to the conditions or have allowed them to persist pursuant to a Jail policy. *See Thomas*, 604 F.3d at 303 ("[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."). Although Fuller has not pleaded with specificity the number of times that she has suffered these conditions, it is plausible based on the timeframe described in her complaint that they have lasted over several years. And because Fuller has alleged that the conditions have caused her serious long-term physical damage in the form of asthma, fibroid tumors, and even infertility, it is reasonable to infer that these are persistent problems. It is also difficult to imagine how some of the conditions she describes—including visible mold and maggot infestations—could appear in the Jail at random and be present for only short periods of time. *See Brown v. Dart*, 14 C 3032, 2017 WL 3219217, at *5 (N.D. Ill. July 28, 2017) (finding that even though the plaintiff failed to

11

"detail the number of times he and other inmates experienced each condition," his complaint successfully alleged a policy because it was reasonable infer that the systemic issues he described (*i.e.*, insufficient heating, mold, and pest infestations) lasted at least several months). Finally, while all of the allegations in Fuller's TAC are framed as being based on her own experience, she has also pleaded that other inmates have suffered from the same living conditions. (*See* TAC ¶ 15); *see also White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (finding that the complaint "was not required to identify every other or even one other individual" who suffered as a result of the alleged policy to state a valid *Monell* claim). Moreover, it is reasonable to assume that worm and maggot infestations and contaminated water would affect the other inmates housed near Fuller. *See Brown*, 2017 WL 3219217, at *5 ("A pest infestation extending from Plaintiff's cell through 'the living quarters and . . . in the cells and dayroom' is also unlikely to affect Plaintiff in isolation."). In sum, the Court concludes that Fuller has sufficiently pleaded that Defendants engaged in a persistent and widespread practice of allowing unconstitutional conditions of confinement to persist at the Jail. Defendants' Rule 12(b)(6) motions are therefore denied with respect to Count II.

In Count III, Fuller alleges that Dart and Jacobs-El were deliberately indifferent to her serious medical needs. Specifically, Fuller claims that Dart and Jacobs-El learned of her diagnoses for asthma, depression, and uterine fibroid tumors through County doctors. When Fuller suffered shortness of breath, anxiety, and panic attacks, she was denied reasonable medical care.

Count III does not contain sufficient detail to state a claim against Dart and Jacobs-El in their official capacities. First, the facts included in the complaint do not establish that Dart and Jacobs-El as policymakers knew about or were personally responsible for the alleged violation. While "defendants such as the Sheriff and the Director of the Jail can realistically be expected to

know about or participate in creating systematic jail conditions," *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999), it is not as plausible that they would know about the individual health problems of each inmate. Fuller has not pleaded that Dart and Jacobs-El actually denied her medical care or directed others to do so. She has also failed plausibly to allege that the refusal of reasonable medical treatment is a widespread issue, rather than a random event, as required to state a *Monell* claim. Her claim is based exclusively on her own experiences. While a plaintiff need not necessarily refer to the experiences of others to successfully allege a policy, *see White*, 829 F.3d at 844, Fuller's complaint does not even detail how many times Jail officials denied **her** reasonable care. *See Wilson v. Cook County*, No. 19 C 7824, 2020 WL 5642945, at *4 (N.D. Ill. Sept. 22, 2020) (finding that the plaintiff had stated a valid *Monell* claim against the County where his claim relied solely on his own experiences, but he set forth three separate incidents).

Because Count III does not allege sufficient facts for the Court to infer that policymakers Dart and Jacobs-El were personally involved in Fuller's medical care or that her issues were symptomatic of a widespread County policy or custom, the count fails to state a valid *Monell* claim. Defendants' motions to dismiss are granted with respect to Count III.

## II. Rule 12(e) Motion for More Definite Statement

Finally, Rule 12(e) allows a defendant to seek a more definite statement when the relevant pleading is so lacking in detail that the defendant cannot adequately respond. *See Chapman*, 875 F.3d at 848–49. A proper Rule 12(e) motion "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). In contrast to a Rule 12(b)(6) motion, a Rule 12(e) motion "is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively." *Chapman*, 875 F.3d at 849. However, the Rule "cannot be used to turn federal civil procedure into a fact-pleading or code-

pleading system." *Id.* "Motions under Rule 12(e) are disfavored generally, and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft responsive pleading." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 917 (N.D. Ill. 2016) (internal quotation marks omitted).

Defendants contend that Fuller's TAC is unintelligible or ambiguous in three areas: (1) time, (2) the identities of the subjects of the allegations, and (3) the constitutional standard that applies to her claims. As to the last, the Court has already rejected Defendants' argument that Fuller must specify whether she is bringing claims pursuant to the Eighth or the Fourteenth Amendments in order to proceed with her claims. The Court also sees no serious ambiguity with respect to the subjects of any allegations. Both defense motions argue that "[t]he TAC levies several allegations against 'the Individual Defendants,' but never identifies who they are." (*See* Dart's Mot. at 2, Dkt. No. 36; Jacobs-El & County's Mot. at 2, Dkt. No. 42.) Considering that there are only three Defendants in the case, two of which are individuals, it is reasonable to assume that the term "Individual Defendants" refers to Dart and Jacobs-El. And as explained above, all of Fuller's claims amount to claims against the County anyway. Lastly, with respect to the TAC's timeframe, plaintiffs are not required to plead specific dates or "plead around the statute of limitations in order to ease [their] opponents' discovery burdens." *Caruth v. Wexford Health Sources, Inc.*, No. 16 C 6621, 2018 WL 3630014, at *3 (N.D. Ill. July 31, 2018). Fuller has pleaded sufficient facts—at least in connection to the surviving Count II—to put Defendants on notice of the claims against them and allow them to respond. That is all Fuller is required to do at this stage. *See id.* (denying a Rule 12(e) motion based on the complaint's failure to plead specific dates). Accordingly, Defendants' motions for a more definite statement are denied.

14

## CONCLUSION

Defendants' motions to dismiss (Dkt. Nos. 36, 42) are granted in part and denied in part. Count I is dismissed without prejudice as duplicative of Count II. Count III is dismissed without prejudice for failure to state a claim. Defendants' motions are denied with respect to Count II. Because Count II survives the motions to dismiss, Count IV against the County for indemnification may proceed as well.

ENTERED:

Dated: March 31, 2022

_____
Andrea R. Wood
United States District Judge